LaROSE, Judge.
Joseph Salvatore Santoro appeals his convictions and sentences for eighteen counts of felony bookmaking. We affirm. Mr. Santoro argues that the State failed to prove that he committed the crimes in Florida. We write to address his claim that United States v. Truesdale, 152 F.3d 443 (5th Cir.1998), a case dealing with offshore bookmaking, compels reversal. As we explain below, Truesdale is unavailing. Mr. Santoro also argues that the State failed to prove his intent to commit multiple offenses and that the State relied on improper identification evidence to convict him. Mr. Santoro failed to preserve these alleged errors in the trial court; he has not demonstrated fundamental error. Thus, we reject these arguments without further discussion.
Between late 2001 and early 2002, the Collier County Sheriffs Office investigated Mr. Santoro’s bookmaking operations. Mr. Santoro contacted an undercover officer and asked if he wanted to place bets. Mr. Santoro confirmed the events on which the officer would like to place bets, informed the officer of his dollar limits, and provided toll-free service numbers and an identification number for placing bets. Mr. Santoro also gave the officer his personal phone number. Thereafter, the undercover officer placed numerous bets by phone with unknown individuals using the service numbers provided by Mr. Santoro.
On one occasion, Mr. Santoro met the officer in Naples and paid him $1500 for bets made during the undercover operation. A week later, the officer and Mr. Santoro spoke by phone to arrange a $1150 payment by the officer. Mr. Santo- *1236 ro instructed the officer to send the money to Mr. Santoro’s Fort Lauderdale address. The sheriffs office sent the money to that address. The betting continued after Mr. Santoro arranged for an increase in the undercover officer’s betting limits. A final meeting occurred at an exit off Interstate 75 in mid-February, where the officer paid a $1200 betting debt to Mr. Santoro.
The State filed an information charging Mr. Santoro, as a principal, with bookmaking.
The term “bookmaking” means the act of taking or receiving, while engaged in the business or profession of gambling, any bet or wager upon the result of any trial or contest of skill, speed, power, or endurance of [man] ... or upon the result of any chance, casualty, unknown, or contingent event whatsoever.
See § 849.25(l)(a), Fla. Stat. (2001). The bookmaking statute lists factors to be considered in determining whether a person has engaged in the offense of bookmaking:
1. Taking advantage of betting odds created to produce a profit for the bookmaker or charging a percentage on accepted wagers.
2. Placing all or part of accepted wagers with other bookmakers to reduce the chance of financial loss.
3. Taking or receiving more than five wagers in any single day.
4. Taking or receiving wagers totaling more than $500 in any single day, or more than $1500 in any single week.
,5. Engaging in a common scheme with two or more persons to take or receive wagers.
6. Taking or receiving wagers on both sides on a contest at the identical point spread.
7. Any other factor relevant to establishing that the operating procedures of such person are commercial in nature.
See § 849.25(l)(b).
The trial court instructed the jury that in order to convict Mr. Santoro, the State had to prove (1) that he engaged in the business or profession of gambling; (2) that while so engaged, he took or received a bet or wager; and (3) that the bet or wager was upon the result of a trial or contest of skill, speed, power, or endurance of man. See § 849.25(l)(a); Fla. Std. Jury Instr. (Crim.) 22.14. The trial court also instructed the jury to consider the section 849.25(l)(b) factors in making its deliberations. See Fla. Std. Jury Instr. 22.14.
Finally, the trial court gave the jury the standard principal instruction:
If the defendant helped another person or persons commit or attempt to commit a crime, the defendant is a principal and must be treated as if he had done all the things the other person or persons did, if the defendant had a conscious intent that the criminal act be done and the defendant did some act or said some word which was intended to, and which did incite, cause, encourage, assist or advise the other person or persons to actually commit or attempt to commit the crime.
To be a principal, the defendant does not have to be present when the crime is committed or attempted.
Fla. Std. Jury Instr. 3.5(a); see also § 777.011, Fla. Stat. (2001). The jury found Mr. Santoro guilty of all charges.
Mr. Santoro claims that the bets were made offshore, most likely in Costa Rica. Therefore, he argues, the State failed to prove that gambling occurred in Florida. Mr. Santoro bases his argument on United States v. Truesdale, 152 F.3d 443. His reliance is misplaced. Truesdale involved *1237 a bookmaking prosecution under 18 U.S.C. § 1955. The federal statute prohibits conducting, financing, managing, supervising, directing, or owning “‘all or part of an illegal gambling business,’ ” specifically a gambling business that “ ‘violates state or local law.’ ” Id. at 446 (quoting § 1955). The Truesdale jury received instructions covering only the Texas bookmaking statute. Id. at 447. On appeal, the appellants argued a lack of evidence showing that they conducted illegal bookmaking in Texas. No bets were received, recorded, or forwarded in Texas; the bets were placed in Jamaica and in the Dominican Republic. Id.
The Fifth Circuit Court of Appeals reversed, concluding that the prosecution presented insufficient evidence to show beyond a reasonable doubt that the appellants conducted bookmaking in Texas. Significantly, although acting as a custodian of money used to place offshore bets violates the Texas statute, the federal indictment did not allege and the jury was not instructed that Mr. Truesdale violated that statutory provision. Id. at 448-49. But for these omissions, the convictions might have been sustained. See United States v. Atiyeh, 402 F.3d 354, 371 (3d Cir.2005).
In Mr. Santoro’s case, the jury heard evidence that he supplied the undercover officer in Florida with toll-free phone numbers and an identification number to call to place bets. Mr. Santoro also gave the officer his Broward County phone number in case any problems arose, so that Mr. Santoro could resolve any problems from Florida. The officer placed bets mostly on football games. Mr. Santoro told the officer in Florida that he could bet up to $500 per game and up to $1500 per week. The officer met with Mr. Santoro on multiple occasions in Florida to exchange gambling money, and Mr. Santoro, from Florida, arranged an increase in the officer’s betting limit. The information specifically alleged violations of section 849.25(l)(a). The trial court properly instructed the jury on the statutory elements of the charged offenses and on the principal theory.
The circumstances surrounding Mr. Santoro’s offenses render Truesdale inap-posite. Accordingly, his convictions and sentences are affirmed.
Affirmed.
NORTHCUTT, J., and THREADGILL, EDWARD F., Senior Judge, concur.